1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT

8

## SOUTHERN DISTRICT OF CALIFORNIA

9

10    TERRENCE WATKINS,

11                           Petitioner,

12      vs.

13    STU SHERMAN, Warden,

14                        Respondent.

CASE NO. 14cv0260-LAB(BGS)

**REPORT AND RECOMMENDATION RE: DENIAL OF PETITIONER'S WRIT OF HABEAS CORPUS**

15
16

## I. INTRODUCTION

17
18
19
20
21
22
23
24
25
26
27

Petitioner Terrence Watkins ("Watkins"), a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in the San Diego County Superior Court case number SCD236887. (Doc. No. 1.)[1] Watkins raises six claims: (1) wrongful sentence enhancement; (2) forced entry of plea agreement; (3) failure to elicit a factual basis for his plea; (4) unconstitutional infringement upon his right to free speech and assembly; (5) failure to label inchoate crimes as an attempt; and (6) ineffective assistance of counsel. Respondent argues that Watkins's claims fail because the California Court of Appeal's denial of his state habeas petition on the basis that Watkins failed to state a prima facie case for relief was neither contrary to federal law, nor an unreasonable application of the facts in this case. For the reasons discussed below, the Court

28

---

[1]The court refers throughout this Report and Recommendation to the page numbers assigned by CM/ECF.

recommends that the Petition in the instant case be **DENIED** and that this action be **DISMISSED** with prejudice.

## II.  FACTUAL BACKGROUND[2]

"Between August 2011 and October 2011, Watkins and his five co-defendants conspired to commit the crime of home invasion robbery in concert and the crime of transportation and distribution of 15 kilos of cocaine.  The conspiracy consisted of overt act No.1, in which co-defendants Deandre Towers and Bobby Ford met with an undercover agent and discussed the robbery and theft of 15 kilos of cocaine; overt act No. 2, in which Watkins and his co-defendants met with an undercover agent at a Best Buy in National City to stage the robbery; overt act No. 3, in which Watkins and his co-defendants went to a warehouse in National City to stage the robbery; and overt act No. 4, in which Watkins and his co-defendants acquired guns to be used in the robbery."

*See* Lodgment No. 4, Opinion of California Court of Appeal, case number D061551.

## III.  PROCEDURAL BACKGROUND

On or about November 29, 2011, Watkins pleaded guilty to one count of conspiracy to commit a home invasion robbery. (Cal. Penal Code § 182(a), 211, 212.5(a), 213(a)(1)(A)(B).  Watkins also pleaded guilty to a gang enhancement and a personal use of a firearm enhancement.  (Cal. Penal Code §§ 186.22(b)(1), 12021.5(a)).  (Lodgment 1 at 16-18, 90; 2 at 34-35.)  He also admitted a serious prior felony and prior strike allegations.  (Lodgment 1 at 16-18, 90; 2 at 30, 36.)  The court denied Watkins's motion to strike his prior strike conviction.  See *People v. Superior Court* (Romero), 13 Cal. 4th 497 (1996).

The court sentenced Watkins to a total of 13 years in prison for conspiracy to commit home invasion robbery in concert, comprised of the lower term of three years, doubled to six years due to the strike prior, plus five years for the serious felony prior, and the middle term of two years for the firearm allegations.  The court

---

[2] State court factual findings are presumed to be correct and the petitioner has the burden of rebutting these findings by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

1   struck the gang allegations and prison priors.  (Lodgment 1 at 92; 2 at 76-79.)

2       On July 19, 2012, Watkins appealed the final judgment and sentence in the

3   Fourth District California Court of Appeal, Division One, contending the trial court

4   erred by:  (1) considering his "strike prior" for purposes of sentencing,

5   (2) imposing a consecutive sentence for his firearm enhancement after striking

6   punishment for the gang enhancement, and (3) imposing a sentence longer than the

7   one the People offered as a stipulated sentence.  (Lodgment 3.)   Although Watkins'

8   appellate counsel drew the court's attention to the sentencing issues listed above, she

9   did not allege error and requested the court to independently review the record

10  pursuant to *People v. Wende,* 25 Cal. 3d 436 (1979).  *Id.*  On October 15, 2012, the

11  state appellate court determined there were no arguable issues and affirmed the

12  judgment.  (Lodgment 4.)  Watkins did not file a petition for review in the California

13  Supreme Court.

14      On May 13, 2013, Watkins filed a Petition for Writ of Habeas Corpus in the

15  San Diego Superior Court.  (Lodgment 5.)  He asserted that his constitutional rights

16  were violated when the trial court:  (1) violated the plea agreement by imposing an

17  enhancement for a prior conviction that he contends was supposed to have been

18  dismissed; (2) coerced him into pleading guilty; (3) failed to elicit a factual basis for

19  his plea; (4) infringed upon his right to free speech and assembly; and (5) failed to

20  preface inchoate crimes as attempted crimes.  (*Ibid.*)  He also claimed (6) ineffective

21  assistance of counsel.  (*Ibid.*)  On July 16, 2013, the superior court denied the

22  petition for failing to state a prima facie case for relief.  (Lodgment 6.)

23      On September 9, 2013, Watkins filed a Petition for Writ of Habeas Corpus in

24  the California Court of Appeal.  (Lodgment 7.)  On September 26, 2013, the state

25  appellate court denied the petition, determining that Watkins did not present

26  evidence to support any of his contentions.  (Lodgment 8.)

27      On October 24, 2013, Watkins filed his Petition for Writ of Habeas Corpus

28  with the California Supreme Court.  (Lodgment 9.)  (*Ibid.*)  On December 11, 2013,

the Supreme Court summarily denied his petition for review.  (Lodgment 10.)

On February 3, 2014, Watkins filed the instant federal Petition for Writ of Habeas Corpus, which raises the same six claims made in his state habeas petitions. (Doc. No. 1.)  Respondent filed an Answer on April 15, 2014.  (Doc. No. 6.)

### IV.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs review of Watkins's Petition because Watkins filed his federal habeas Petition after the Act's 1996 effective date.  *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997); *see also Harrington v. Richter,* 131 S. Ct. 770, 785-86 (2011) (applying 28 U.S.C. § 2254(d)(1) to federal habeas review of state court's determination of an ineffective assistance of counsel claim).  The AEDPA imposes a "highly deferential standard for evaluating state-court rulings," requiring that "state-court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (quoting *Lindh*, 521 U.S. at 333 n.7).  Under the AEDPA's highly deferential standard of review, a federal court may not grant habeas relief on a claim adjudicated on its merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington,* 131 S. Ct. at 784.  Under the first AEDPA exception, "clearly established Federal law" refers to the Supreme Court "holdings, as opposed to the dicta," as of the time of the relevant state court decision.  *Williams v. Taylor*, 529 U.S. 362, 365 (2000).  Although only Supreme Court holdings are binding, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably."  *Stanley v. Cullen*, 633

1   F.3d 852, 859 (9th Cir. 2011).

2   In determining whether a state court's decision was "contrary to" clearly

3   established Federal law, a reviewing court must evaluate whether the decision "

4   'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set

5   of facts' that were before the state court." *Cullen v. Pinholster*, 131 S. Ct. 1388,

6   1399 (2011) (quoting *Williams*, 529 U.S. at 406).  A state court is not required to

7   cite or even be aware of Supreme Court cases, "so long as neither the reasoning nor

8   the result of the state-court decision contradicts them." *Clark v. Murphy*, 331 F.3d

9   1062, 1071 (9th Cir. 2003) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)); *see also*

10  *Coleman v. Thompson*, 501 U.S. 722, 733 (1991) (quoting *Michigan v. Long*, 463

11  U.S. 1032, 1040-41 (1983)) (finding that when the "state court's decision fairly

12  appears to rest primarily on federal law" and "when the adequacy and independence

13  of any possible state law ground is not clear from the face of the opinion, [a federal

14  court] will accept as the most reasonable explanation that the state court decided the

15  case the way it did because it believed that federal law required it to do so").

16  If a state court decision "identifies the correct governing legal principle in

17  existence at the time," a reviewing court must assess whether the decision

18  "unreasonably applies that principle to the facts of the prisoner's case." *Cullen*, 131

19  S.Ct. at 1399 (quoting *Williams*, 529 U.S. at 413).  An "unreasonable application" of

20  law is "different from an incorrect application" of that law.  *Harrington*, 131 S. Ct.

21  at 785 (quoting *Williams*, 529 U.S. at 410).  Similarly, a state court's decision based

22  upon a factual determination may not be overturned on habeas review unless the

23  factual determination is "objectively unreasonable in light of the evidence presented

24  in the state-court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*,

25  384 F.3d 628, 638 (9th Cir. 2004)).

26  Under the second AEDPA exception, "factual determinations by state courts

27  are presumed correct absent clear and convincing evidence to the contrary,

28  § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a

factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  Under the AEDPA, the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

The AEDPA standard requires a high level of deference to state court decisions, such that it "preserves authority to issue habeas writ in cases where there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with the Supreme Court's precedents." *Harrington*, 131 S. Ct. at 786. Accordingly, to obtain federal habeas relief, a state prisoner must show that the state court's decision on a federal claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786–87; *see also Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) ("The prisoner bears the burden of rebutting the state court's factual findings 'by clear and convincing evidence.")  Moreover, even if this Court finds such a state court error of clear constitutional magnitude, habeas relief is not available unless the error "had substantial and injurious effect or influence in determining the jury's verdict." *Fry v. Pliler*, 551 U.S. 112, 116 (2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

Where more than one state court has adjudicated a petitioner's claims, a federal habeas court analyzes the last reasoned decision as the basis for the state court's justification. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004); *see also Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005) (quoting *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002) ("In determining whether a state court decision is contrary to federal law, we look to the state's last reasoned decision.")  In the instant matter, the California Supreme Court summarily denied review of Watkins's habeas petition. (Lodgment 10.)  In this case, the California Court of

1    Appeal's decision on September 26, 2013, stands as the last reasoned decision

2    pertaining to Watkins's claims.  (Lodgment 8.)

3        Accordingly, the Court must look to the California Court of Appeal's decision

4    on Watkins's state habeas petition to determine whether that decision was contrary

5    to, or an unreasonable application of, clearly established Federal law or an

6    objectively unreasonable determination of the facts.  *See Medley v. Runnels,* 506

7    F.3d 857, 862 (9th Cir. 2007) ("On habeas review, a federal court looks through

8    unexplained state court decisions leaving, in effect, the denial of post-conviction

9    relief to the last reasoned state court decision to address the claim at issue.")

10                                   **V.  DISCUSSION**

11   **A.  Claim 1: Petitioner Knowingly Agreed to a Plea That Allowed Sentence**

12   **Enhancements for Prior Convictions**

13              **1.  Petitioner's Claims**

14       Watkins contends that the plea agreement was changed without his consent

15   and that he was not given an opportunity to withdraw his plea.  (Doc. No. 1 at 6-9.)

16   Specifically, he argues that he understood the plea to call for dismissal of prior

17   convictions as well as other charges and allegations against him, however on the day

18   of sentencing, the Judge used his power to enhance his sentence based on priors he

19   thought would be stricken.  (*Ibid.*; *see* Traverse, ECF No. 13 at 11.)

20              **2.  Respondent's Argument**

21       Respondent argues Watkins is not entitled to habeas relief because the plea

22   agreement only called for the dismissal of other charges and allegations rather than

23   prior convictions.  (Doc. No. 6-1 at 5.)  At the time of his plea agreement,

24   Respondent states Watkins admitted having previously served two prior prison terms

25   and having been convicted of both a serious felony and a strike.  (*Ibid.*)  Respondent

26   notes Watkins also acknowledged that he faced a maximum punishment of 34 years

27   in prison.  (*Ibid.*)  Respondent contends the Judge, at the time of sentencing, gave

28   Watkins the benefit of the plea bargain by sentencing him to only 13 years in state

1  prison.  (*Ibid.*)

2      **3.  Standard of Review**

3      "The longstanding test for determining the validity of a guilty plea is 'whether

4  the plea represents a voluntary and intelligent choice among the alternative courses

5  of action open to the defendant.' "  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *see also*

6  *Doe v. Woodford*, 508 F.3d 563, 570 (9th Cir. 2007) (explaining that a plea is

7  voluntary if the record affirmatively proves so under the totality of the

8  circumstances).

9      A plea is involuntary if it is the product of threats, improper promises, or other

10  forms of wrongful coercion.  *Brady v. United States*, 397 U.S. 742, 748 (1970).  A

11  plea is unintelligent if the defendant is without the information necessary to assess

12  the advantages and disadvantages of a trial as compared to entering a guilty plea.

13  *Hill v. Lockhart*, 474 U.S. at 56.  While due process requires a guilty plea to be both

14  knowing and voluntary, it does not require a state court to enumerate all rights a

15  defendant waives when he enters a guilty plea.  *Rodriguez v. Ricketts*, 798 F.2d

16  1250, 1254 (9th Cir. 1986).

17      **a.) The Plea Agreement**

18      Watkins's written plea agreement is in the record and it indicates Watkins

19  pleaded guilty to one count of conspiracy to commit a home invasion robbery; a

20  gang enhancement and a personal use of a firearm enhancement.  (Lodgment 1 at 16-

21  18, 90; 2 at 34-35.)  He also admitted a serious prior felony, prison priors and a prior

22  strike allegation.  (Lodgment 1 at 16-18, 90; 2 at 30, 36.)  The document also

23  explicitly provides:  the "D.A. will move to dismiss remaining counts and

24  allegation[s]."  (Lodgment 1 at 16.)  The plea agreement does not state that prior

25  felonies, prison priors or prior strikes would not be considered by the Judge at

26  sentencing.  (*Ibid.*)

27      Watkins affirmatively consented to the terms of this agreement by signing his

28  initials next to the following statements:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> I am entering my plea freely and voluntarily, without fear or threat to me or anyone closely related to me.  [¶]  I am sober and my judgment is not impaired.  I have not consumed any drug, alcohol or narcotic within the past 24 hours.  [¶] . . . I understand that I may receive this maximum punishment as a result of my plea:  34 years imprisonment or imprisonment plus a term of mandatory supervision.  (Lodgment 1 at 16-17.)

Watkins's initials indicate his awareness and acceptance of the terms of the plea.  *See Doe v. Harris*, 640 F.3d 972, 974-75 (9th Cir. 2011) (explaining that signing one's initials shows acceptance of plea terms).

### b.)  Hearing Transcript re: Petitioner's Oral Plea

In addition to the written plea agreement, a transcript of Mr. Watkins' plea before the court on November 29, 2011, is in the record.  In the transcript, the court states the following:

> "The understanding is this: You'll plead guilty to Count 1, You'll admit the conduct allegations that go with count 1.  These are the gang allegation and the personal use of a firearm allegation under section 12021.5(A).  You'll also admit all the other allegations on the charging document against you that are based on your priors.  These include two prison priors, one serious felony prior conviction and one strike prior.  Is this your understanding of what's going to happen sir?
>
> The Defendant (Watkins): Yes.
>
> The Court: The understanding as well is that if you do that, everything else on this charging document against you will be dismissed.  All the other counts and allegations will be dismissed.  You face a maximum penalty just based on these counts and allegations or this count and the allegations of 34 years in prison, a fine of $10,000, and a period of parole that could last as long as four years.  Do you understand that?
>
> The Defendant (Watkins): Yes.
>
> The Court: Now, the understanding is that we'll have a sentencing hearing.  The District Attorney will be free to argue what he wants.  Your lawyer will be free to argue what he wants.  I'll get a presentence report.  I'll listen to everything, read everything and I'll make the sentencing decision.  I'm

mindful of what the people's original offer[3] was in this case as to you, and my
sense is it's likely to come in somewhere around that range. It could be more,
it could well be less. I'll make that final decision at the sentencing hearing.
Do you understand all this?

The Defendant (Watkins): Yes.

Lodgment 2, Reporter's Transcript, pp. 29-31.

At Watkins's sentencing hearing on January 25, 2012, the court explained the
sentence as follows:

"With respect to Count 1... conspiracy to commit residential first degree
robbery. It is a three, six , nine offense. The court chooses, considering all
the factors, the low term of three years. Pursuant to the strike prior, which I
have found in place –left in place, that term is doubled for a total term
attributable to count 1 of six years ....With respect to the gang allegation, ... I
find that was properly established by his admission... this carries a possible
five year or ten year enhancement ... I am going to strike that additional
punishment. I'm not striking the allegation, I'm striking the punishment.
There is a serious felony prior...I have no discretion with respect to that. It
carries a mandatory five-year consecutive term. And so for the serious felony
prior ... he gets an additional five years. With respect to the prison ... priors
that were alleged and admitted, I strike those and [they are] dismissed for
sentencing purposes in this case alone. This leaves the allegation...[of]
generically carrying or possessing in the gang context of a firearm during the
commission of a gang offense ... I'm going to choose the midterm of two
years. That is a consecutive term. The total term therefore is 13 years."

Lodgment 2, Reporter's Transcript, pp. 77-79.

///

///

///

///

---

[3]The original offer presented by the prosecution was "a plea to a single count of a serious
felony, admission of the strike and nickel, for a total term of 12 years ... at 80 percent." Lodgment 2,
Reporter's Transcript, pp. 16-17. The superior court judge sentenced Watkins to a total term of 13
years. Lodgment 2, Reporter's Transcript, pp. 77-79.

### 4. Analysis

The Fourth District California Court of Appeal, Division One denied Watkins's petition, determining that the record did not demonstrate, and Watkins did not present any evidence, to show his plea was not voluntary or knowing. (Lodgment 8.)  This Court's review of the record confirms that conclusion. Specifically, the record indicates that before he entered his guilty plea, Watkins was aware of, and consented to, the possibility of receiving an enhancement of his sentence by the Judge.  Watkins assented to this condition in order to avoid facing a maximum 34-year sentence for the conspiracy charge alone.  Given the contents of the plea agreement and the hearing transcript, which are both in the record, it was not unreasonable for the state appellate court to determine Watkins had not made a prima facie showing that his plea agreement was changed without his knowledge or consent.

The state appellate court's determination is also in conformance with clearly-established federal law.   Under *Blakely v. Washington*, 542 U.S. 296 (2004), the state of California is free to seek a judicial sentence enhancement as long as the defendant either stipulates to the relevant facts or consents to judicial fact finding at the time of his guilty plea.  *Id.* at 310.  In the present case, Watkins pleaded guilty to one count of conspiracy to commit a home invasion robbery; a gang enhancement and a personal use of a firearm enhancement.  (Lodgment 1 at 16-18, 90; 2 at 34-35.)  Based on Watkins's admission to the gang allegation, the judge had the authority, to increase the sentence.  There is no violation under *Blakely* and Watkins's sentence enhancement was in conformance with clearly-established federal law.

**IT IS THEREFORE RECOMMENDED** that Watkins's first claim, which alleges his plea was changed without his knowledge, should be **DENIED** as the state appellate court's denial of this claim was neither an unreasonable determination of the facts of this case, nor an unreasonable application of federal law.

*///*

**B. Claim 2: Petitioner's History of Depression Did Not Prevent Him From Voluntarily Entering A Guilty Plea**

### 1. Petitioner's Claims

Watkins states that he suffers from bi-polar disorder, ongoing post-traumatic stress disorder ("PTSD"), and clinical depression. (*Id.* at 13.) Due to his preexisting mental illnesses, Watkins argues the trial court should have held a competency hearing and that its failure to do so precludes a finding that he a voluntarily and intelligently entered a guilty plea. (*Id.* at 12.; *see also* Traverse, ECF No. 13 at 13.) He also alleges he was forced into entering a guilty plea and that the superior court judge began colluding against him in an unreported conference with all counsel before the case was called. (*Id.* at 14.)

### 2. Respondent's Argument

Respondent argues the record does not support a finding that Watkins's past mental illnesses prevented him from knowingly and voluntarily pleading guilty in 2012. (Doc. No. 6-1 at 5.) A probation officer's report and a sentencing hearing from a prior case in 2002 disclosed Watkins's previous diagnosis of depression, with which he has suffered his whole life. (*Ibid.*) The report states that Watkins was also diagnosed with bi-polar disorder in 2001. (*Ibid.*) However, as of 2011, Respondent notes that Watkins told the court at the time he entered his plea that he was not pressured or threatened. (*Ibid.*) Respondent also points out that at the time of Watkins's probation report, dated January 20, 2012, he reported that he was not taking any medications and was in good physical health. (*Id.* at 5.)

### 3. Analysis

"Due process requires a trial court to hold a hearing, *sua sponte*, on a defendant's competence to plead guilty whenever the trial judge entertains or reasonably should entertain a good faith doubt as to the defendant's ability to understand the nature and consequences of the plea, or to participate intelligently in the proceedings and to make a reasoned choice among the alternatives presented."

*Chavez v. United States*, 656 F.2d 512, 515 (9th Cir. 1981).

In *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam), the Supreme Court held that the standard for competence to stand trial is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *Id.* at 402. In *Godinez v. Moran*, 509 U.S. 389 (1993), the Supreme Court extended this standard for defendants who plead guilty. *Id.* at 399 (rejecting the notion that competence to plead guilty must be measured by a standard that is higher than the *Dusky* standard). "In addition to determining that a defendant who seeks to plead guilty or waive counsel is competent, a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary." *Id.* at 400.

The Court of Appeal denied Watkins's claim, determining that he was able to make a knowing and voluntary plea. Specifically, the Court stated: "[Watkins] does not demonstrate . . . any evidence of an actual mental illness that would prevent him from entering a guilty plea." (Lodgment 8.) The record confirms this determination. There are no facts in the record, or facts presented by Watkins, that would indicate the superior court judge should have entertained doubts as to Petitioner's competence. *See Chavez*, 656 F.2d at 515.

For example, at the November 29, 2011 hearing, after listening to the judge explain the terms of the plea deal, Watkins told the court he understood the offer and wanted to enter a guilty plea. The following exchange took place:

"The Court: Do you understand all this?

[Watkins]: Yes

The Court: Now, is this how it's been explained to you?

[Watkins]: Yes

The Court: Did anyone make you any other promises?

[Watkins]: No.

Do you feel like you've been pressured or threatened to enter this plea other than being worried about what you might face if you got convicted?

[Watkins]:  No.

The Court: Have you had any drugs or alcohol or medicine that might make it difficult for you to understand what's happening?

[Watkins]: No.

The Court: Do you think you understand what's happening?

[Watkins]: Yes

The Court: This is your change of plea form, sir.  Did you read and go over this form with your lawyer?

[Watkins]: Yes.

The Court: Did you put your initials in the boxes as you covered each paragraph?

[Watkins]: Yes.

The Court: Did you understand everything your lawyer explained to you from the form?

[Watkins]: Yes.

The Court: Did you sign the form?

[Watkins]: Yes.

. . .

The Court: The change of plea form, sir, tells you about your constitutional rights.  Those are important rights.  They mean you're not required to plead guilty to anything.  If you wish, you can have a trial and all the rights that go with a trial.  Do you understand that?

[Watkins]: Yes.

(Lodgment 2 at 31-34.)

As demonstrated by the record, Watkins had several opportunities on the day he entered his plea to tell the judge that he was unable to comprehend the proceedings because of his mental state.  However, he did not voice any concerns, or otherwise alert the judge that he felt his assent to the plea deal was compromised by the onset of depression, PTSD or other illness.

Watkins had another opportunity at his sentencing hearing, which occurred on January 25, 2012, (more than 45 days after his plea was entered), to notify the judge

that he was feeling the effects of mental illness.  However, he did not.  And, in fact, counsel for Mr. Watkins told the judge on the record before sentencing began that: "I talked to Mr. Watkins to make sure that he is physically, mentally prepared to proceed this morning, and he has assured me he is.  I always like to make that inquiry of a client.  You never know if something has come up of a medical nature." (Lodgment 2 at 60.)   The evidence in the record supports the Court of Appeal's determination that Watkins's history of depression and PTSD did not prevent him from entering a knowing and voluntary guilty plea.  Therefore, the Court of Appeal's decision finding there was no evidence of a mental illness that prevented Watkins from entering a guilty plea  was not an unreasonable determination of the facts in this case

Watkins's claim that the judge colluded against him also holds no merit.  The judge disclosed on the record that he met with all counsel in an unreported conference before the case was called.  (Lodgment 2 at 3.)  The judge stated that at the conference, counsel advised him of  the complexities of the case.  (*Ibid.*)  The judge then explained the very complexities he discussed with counsel to Watkins and his co-defendants on the record at the hearing.  (*Id.* at 3-8.)  The complex issues addressed by the judge included an explanation of the pros and cons posed by allegations, package offers, enhancements, proceeding with a preliminary hearing and going to trial.  (*Id.* at 3-8.)  Specifically, the judge stated:

> "I want to be sure that the record shows that each of you understands what your offer is and what the potential downside might be if you didn't take it.  I do that frankly for two reasons.  One, I think it's only fair.  I think you should be entitled to know what the worst -case scenario might be as best that can be determined, before you make a decision to accept or reject an offer.  And the second one is ...I want to be sure that I did everything in my power to make sure that each one of you gentlemen was fully informed of what the downside might be. And then although I never get pleasure out of imposing huge sentences, at least I can know that everybody knew what the cards were on the table."

(*Id.* at 6-8.)

There is no evidence in the record, and Watkins has failed to produce any evidence, to indicate that the superior court judge should have doubted his ability to understand the consequences of the plea or to participate intelligently in the proceedings on November 29, 2011 or at the sentencing hearing on January 25, 2012.  After an extensive explanation of the consequences of the plea deal and in response to the court's many questions as to whether he understood the terms of his plea, Watkins repeatedly answered that he understood.  **IT IS THEREFORE RECOMMENDED** that the Court **DENY** Watkins's second claim alleging he was forced to enter a guilty plea as a result of his history of mental illness.  The Court of Appeal's decision finding there was no evidence of a mental illness that prevented him from entering a guilty plea was neither an unreasonable application of federal law, nor an unreasonable determination of the facts in this case.

**C.  Claim 3: The Trial Court Established an Adequate Factual Basis for Petitioner's Guilty Plea**

**1.  Petitioner's Claims**

Watkins claims the superior court judge failed to elicit a factual basis for his plea. (Doc. No. 1 at 19.)  He argues that neither the judge, nor the prosecutor, could establish he was a participant in the alleged crimes.  (*Ibid.*)  Specifically, Watkins highlights two examples from the record.  (*Id.* at 10.)  He claims that he was never in possession of a gun.  (*Ibid.*; *see also* Traverse, ECF No. 13 at 17.)   He also claims that he denied wanting any involvement with the sting operation and that his only intent was to return a crack pipe.  (*Ibid.; see also* Traverse, ECF No. 13 at 17.) Watkins seeks a withdrawal of his guilty plea on the ground that there was insufficient and conflicting evidence to support his plea.  (*Id.* at 10-11.)

**2.  Respondent's Argument**

Respondent argues that United States Supreme Court precedent invalidates Watkins's claim.  (Doc. No. 6-1 at 6.)  Specifically, Respondent states in *North*

1  *Carolina v. Alford*, 400 U.S. 25 (1970), the Supreme Court held that express

2  admission of guilt is not constitutionally required for a valid guilty plea.  (*Ibid.*)

3  Further, in *Tollet v. Henderson*, 411 U.S. 258 (1973), the Supreme Court held that a

4  petitioner who has pled guilty may only attack the voluntary and intelligent character

5  of the guilty plea by showing that the advice received from counsel was not within

6  the range of competence demanded of attorneys in criminal cases.  (*Ibid.*)

7  Respondent argues that Watkins had an opportunity to challenge the charges by

8  proceeding to trial, but chose to plead guilty instead; therefore, he is not entitled to

9  relief.  (*Id.* at 7.)

10     **3. Analysis**

11     "An accused may voluntarily, knowingly, and understandingly consent to the

12  imposition of a prison sentence even though he is unwilling to admit participation in

13  the crime."  *N. Carolina*, 400 U.S. at  25.  "Guilty pleas coupled with claims of

14  innocence should not be accepted unless there is factual basis for [the] plea and until

15  [the] judge has inquired into and sought to resolve conflict between waiver of trial

16  and claim of innocence."  *Ibid.*  "When a criminal defendant, on advice of counsel,

17  has solemnly admitted in open court that he is guilty of a charged offense he may not

18  thereafter raise independent claims relating to deprivation of constitutional rights . . .

19  but may only attack the voluntary and intelligent character of the plea by showing

20  that counsel's advice was not within the standards of governing Supreme Court

21  decision."  *Tollett*, 411 U.S. at 258.

22     The state appellate court denied Watkins' state petition finding: "[T]he

23  evidence in support of the petition demonstrates... the court determined that Watkins

24  understood his guilty plea and found a factual basis for the plea.  Watkins's [sic]

25  conclusory claims to the contrary do not state a prima facie case for relief."

26  (Lodgment 8.)

27     This Court RECOMMENDS a finding that Watkins's claim alleging the judge

28  failed to elicit a factual basis for his plea is without merit.  At the November 29,

2011, hearing, the judge asked Watkins the following:

> "The Court: Now, the change of plea form tells me that you conspired to commit a residential home invasion robbery in concert.  You did this with fellow Lincoln Park gang members, in concert, while armed with a gun.  Are these things true?
>
> The Defendant (Watkins): Yes."

(Lodgment 2, November 29, 2011 hearing at p. 34.)

The transcript of the hearing also indicates that before Watkins entered his plea, the judge discussed the constitutional right to a jury trial to Watkins explaining:

> "[Y]ou're not required to plead guilty to anything.  If you wish, you can have a trial and all the rights that go with a trial.  Do you understand that?
>
> The Defendant (Watkins): Yes.
>
> The Court:  If you take this agreement and make this plea, then you won't be having a trial.  If you don't have a trial, you won't be using all of those rights.  Does that make sense to you?
>
> The Defendant (Watkins): Yes.
>
> The Court: You'll be giving them up, in other words.  Do you understand?
>
> The Defendant (Watkins): Yes."

(*Id.* at 33-34.)

Notwithstanding the advisement of the superior court judge, Watkins voluntarily entered a plea of guilty.  (*Id.* at 34-35.)  Accordingly, the judge concluded at the hearing: "I find that Mr. Watkins understands and voluntarily and intelligently waives his constitutional rights . . . He understands the nature of the charges and the consequences of the plea and the admissions.  I find a factual basis for each."  (*Id.* at 36.)   **IT IS THEREFORE RECOMMENDED** that Watkins's

third claim be **DENIED** as the Court of Appeal's denial was a reasonable application of federal law and a reasonable determination of the facts in light of the record which demonstrates a factual basis was elicited by the superior court judge and that Watkins entered his guilty plea voluntarily and intelligently.

**D.  Claim 4:  Petitioner's Right to Free Speech and Assembly Was Not Violated**.

> **1.  Petitioner's Claims**

Watkins claims he had a right to be in the same location as his cousin while the sting operation took place because he was not a part of the conspiracy.  (Doc. No. 1 at 25; *see also* Traverse, ECF No. 13 at 20.)  He argues that criminalizing "talking and grouping" violates his right to free speech and assembly.  (*Ibid.*)

> **2.  Respondent's Argument**

Respondent argues conspiracy only becomes criminal after the defendant performs an act in furtherance of committing an underlying, target crime.  Therefore, Respondent argues, Watkins was convicted for his intent to commit home invasion robbery and his participation in several overt acts[4] in furtherance of that conspiracy, not for the simple act of assembling or speaking.  (Doc. No. 6-1 at 7.)  Respondent argues punishment of the conspiracy is permissible under federal law and does not impinge on Watkins' rights of assembly or free speech.  *Id.*

> **3. Analysis**

In *De Jonge v. Oregon*, 299 U.S. 353, 365, 57 S.Ct. 255, 81 L.Ed. 278 (1937), the U.S. Supreme Court explained the distinguishing characteristics of conspiracy as compared to the exercise of free assembly-free speech as follows:

> "The question, if the rights of free speech and peaceable assembly are to be preserved, is not as to the auspices under which the meeting is held but as to

---

[4]  On direct appeal, the state appellate court found: "[t]he conspiracy consisted of overt act No.1, in which co-defendants Deandre Towers and Bobby Ford met with an undercover agent and discussed the robbery and theft of 15 kilos of cocaine; overt act No. 2, in which Watkins and his co-defendants met with an undercover agent at a Besy Buy in National City to stage the robbery; overt act No. 3, in which Watkins and his co-defendants went to a warehouse in National City to stage the robbery; and overt act No. 4, in which Watkins and his co-defendants acquired guns to be used in the robbery."
*See* Lodg. No. 4, Opinion of California Court of Appeal, case number D061551.

its purpose; not as to the relations of the speakers, but whether their utterances transcend the bounds of the freedom of speech which the Constitution protects. If the persons assembling have committed crimes elsewhere, if they have formed or are engaged in a conspiracy against the public peace and order, they may be prosecuted for their conspiracy or other violation of valid laws. But it is a different matter when the State, instead of prosecuting them for such offenses, seizes upon mere participation in a peaceable assembly and a lawful public discussion as the basis for a criminal charge."

*Id.* at 365.

Similarly, under California law, a "conspiracy exists when one or more persons have the specific intent to agree or conspire to commit an offense, as well as the specific intent to commit the elements of that offense, together with proof of the commission of an overt act by one or more of the parties to such agreement in furtherance of the conspiracy." *People v. Herrera*, 83 Cal. App. 4th 46, 64 (2000). These facts may be established either through the use of circumstantial evidence or inferred from the conduct, relationship, interests, and activities of the alleged conspirators before and during the alleged conspiracy. *Ibid.* Discussions and arrangements among conspirators in regard to and for the criminal act may constitute properly chargeable overt acts in a criminal conspiracy prosecution. *People v. Von Villas*, 11 Cal. App. 4th 175, 245 (1992).

After reviewing the well-established federal law governing conspiracy and the California state law Watkins challenges, it is clear that the state law setting forth the elements of conspiracy does not conflict with federal law construing the rights of assembly, association and speech as provided under the First Amendment.

As for Watkins' contention that he was not part of the conspiracy, the state appellate court on direct appeal found otherwise. (Lodgment 4.)  In its opinion, the court of appeal found: (1) co-defendants Deandre Towers and Bobby Ford met with an undercover agent and discussed the robbery and theft of 15 kilos of cocaine; (2) Watkins and his co-defendants met with an undercover agent at a Best Buy in National City to stage the robbery; (3) Watkins and his co-defendants went to a warehouse in National City to stage the robbery; and (4) Watkins and his co-defendants acquired guns to be used in the robbery." (Lodgment 4.)  As a result, the

Court of Appeal denied Watkins's state habeas petition finding "[he] presents no evidence to support any of his contentions."  (Lodgment 8.)

There is no basis in the record from which this Court can conclude that the state court's decision denying Watkins's claim for a violation of his First Amendment rights by virtue of being charged for conspiracy constitutes an unreasonable determination of the facts.  Furthermore, Watson has not identified any legal authority to support a finding that the state court's decision was contrary to or an unreasonable application of federal law.  28 U.S.C. § 2254(d).  **IT IS THEREFORE RECOMMENDED** that Watkins's fourth claim alleging a violation of his First Amendment rights to free assembly, association and speech be **DENIED.**

**E.  Claim 5: Petitioner's Assertion That Inchoate Crimes Are Mischaracterized is Not Supported By Federal Law.**

**1.  Petitioner's Claims**

Watkins claims that his plea agreement is void because inchoate crimes, such as conspiracy, must be described as an attempted crimes.  (Doc. No. 1 at 32.) Watkins argues that his Fifth, Sixth, and Fourteenth Amendment rights were violated because the superior court judge accepted his guilty plea as to conspiracy, however, there was no evidence of conspiracy.  At most, Watkins argues that there may have been an attempt at home invasion robbery.  However, he contends the government would have been unable to prove an attempted robbery charge because there was no actual cocaine to rob due to the fact that he was unwittingly caught in a government sting operation.  (*See* Traverse, ECF No. 13 at 21.)

**2.  Respondent's Argument**

Respondent asserts that there is no Supreme Court authority that supports Watkins's contention that inchoate crimes should be described or construed as an attempted crime.  (Doc. No. 6-1 at 7.)

///

///

**3. Analysis**

The Court of Appeal denied Watkins's petition, explaining that "conclusory allegations made without any explanation of the basis for the allegations do not warrant relief." (Lodgment 8.)  While the court did not specifically mention Watkins's argument that inchoate crimes are mischaracterized, it did state that Watkins "presents no evidence to support any of his contentions" including his claim that there was insufficient evidence to support his plea of guilty to conspiracy to commit home invasion robbery. (*Ibid.*)

As explained in Section D *supra*, well-established federal law recognizes the crime of conspiracy as a legitimate offense.  Federal law has also held that conspiracy may be distinguished from, and is not in conflict with, the rights of assembly, association and speech as provided under the First Amendment.  With respect to Watkins's claim that his conspiracy charge should have been labeled as an attempt, this court has found no law, and Watkins has presented no federal authority, requiring inchoate crimes to be construed or described as "attempts".

In this fifth claim, Watkins again contends that there was no evidence of conspiracy.  However, as also explained in Section D *supra*, the state appellate court found Watkins participated in several overt acts in furtherance of the conspiracy.

Finally, as discussed in Section C *supra*, the record demonstrates Watkins voluntarily and knowingly entered a guilty plea to the conspiracy charge.  The November 29, 2011 hearing transcript indicates the judge explained to Watkins that he had "an absolute right to take the case clear through the legal system . . . to have the question of whether [he] should be found guilty or not guilty decided by a jury of 12 people . . . and nobody is here trying to talk [him] out of doing that." (Lodgment 2 at 4.)  After being made aware of his rights, Watkins told the judge he understood his plea deal and its consequences.  Based on this record, the Court of Appeal denied Watkins's petition, determining that he entered a valid guilty plea. (Lodgment 8.)

**IT IS THEREFORE RECOMMENDED** Watkins's fifth claim be **DENIED**

as the state appellate court's decision denying Watkins's claim, which alleges mischaracterization of the conspiracy charge and insufficient evidence to support his plea of guilty, was neither an reasonable determination of the facts, nor contrary to or an unreasonable application of federal law.

**F.  Claim 6: Petitioner's Counsel Met the Applicable Legal Standard.**

**1.  Petitioner's Claims**

Watkins claims his lawyer: (1) failed to investigate the charged crimes; (2) failed to bring forth favorable and exculpatory evidence; (3) failed to challenge the prosecution's burden of proof at the preliminary hearing; (4) failed to notify the court about his mental illness and the necessity of a competency hearing; and (5) coerced him into entering a guilty plea.  (Doc. No. 1 at 38.)  Specifically, as to item 2, Watkins contends, his counsel at the superior court level, David Ira Berman, Esq., did not follow up on information that another co-defendant, "Mr. Ford[,] was willing to give up his deal so that Petitioner, an innocent man could be set free."  (Traverse, ECF No. 13 at 19.)

**2.  Respondent's Argument**

Respondent addresses each of Watkins's allegations of his trial counsel's deficient performance.  Specifically, with regard to item 1, Respondent argues Watkins fails to proffer evidence that his counsel failed to investigate and does not advise the court as to what evidence would have been disclosed if such investigation took place.  As to item 2, Respondent contends Watkins fails to disclose any exculpatory evidence.  With regard to item 3, Respondent argues Watkins fails to proffer evidence which would have demonstrated that the prosecutor could not have established probable cause at the preliminary hearing.  As to item 4, Respondent argues Watkins fails to demonstrate that his counsel did not advise the trial court about his mental health history, that the trial court was not otherwise aware of his mental health history, or that a competency hearing was necessary.  Finally, with regard to item 5, Respondent argues Watkins fails to provide any evidence that his

counsel coerced him into pleading guilty and the record indicates the contrary.  (Doc. No. 6-1 at 7-8.)

### 3. Analysis

In order to establish an ineffective assistance of counsel, the petitioner must show (1) deficient performance by his counsel, and (2) resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The Supreme Court in *Hill v. Lockhart*, 474 U.S. 52 (1985), adapted the two-part *Strickland* test slightly in order to specifically address challenges to guilty pleas based on ineffective assistance of counsel.  The *Hill* court held that a defendant seeking to challenge the validity of his guilty plea on the ground of ineffective assistance of counsel must show:  (1) his "counsel's representation fell below an objective standard of reasonableness";  and (2) "there is a reasonable probability that, but for [his] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *See also Womack v. Del Papa*, 497 F.3d 998, 1002 (9th Cir. 2007) (quoting *Hill,* 474 U.S. at 57-59).

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotations omitted).  The Court need not address the attorney performance prong if the claim can be resolved on the ground of lack of sufficient prejudice.  *Strickland*, 466 U.S. at 697.

The state court of appeal denied Watkins's habeas petition, explaining that "he does not demonstrate how his attorney was ineffective." (Lodgment 8.)  This court agrees.  Watkins has not identified what helpful evidence defense counsel would have discovered had he conducted an investigation or contacted additional witnesses.

- 24 -

*Strickland*, 466 U.S. at 687, 689.  As an attachment to his Traverse, Watkins does include a letter from his appellate counsel to him discussing a possible claim of ineffective assistance of trial counsel against Mr. Berman for failure to investigate or find exculpatory evidence.  However, in the letter, appellate counsel explains to Watkins that Mr. Berman found "no credible witness to provide a declaration that you were not involved and that the individual you mentioned as a possible declarant was one of the defendants who was only getting a plea bargain if you plead guilty." (*See* Traverse, ECF No. 13 at 85.)  Watkins's letter from appellate counsel does not overcome the presumption that Mr. Berman had a sound strategic reason for not pursuing a declaration as to Watkins's innocence, especially if the declaration was going to come from one of his co-conspirators, co-defendant, Ford[5], whose credibility would have been severely damaged due to his participation in the crime.  *Strickland*, 466 U.S. at 689.  This Court finds no evidence in the record, and no evidence submitted by Watkins to suggest that Mr. Berman's performance was objectively unreasonable.

Watkins's ineffective assistance of counsel claim also fails because Watkins was not prejudiced by his attorney's recommendation that he accept a plea deal.  As reviewed in detail in Sections A through C, *supra,* the record indicates that before he entered his guilty plea, Watkins was aware of, and consented to, the possibility of receiving an enhancement of his sentence by the Judge.  Watkins accepted a plea deal to avoid facing a maximum 34-year sentence for the conspiracy charge alone.  (*See Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir.1990) (holding that the petitioner "suffered no prejudice from his attorney's prediction because, prior to

---

[5] Watkins's co-defendant, Ford, was given a "package offer" at the November 29, 2011 hearing.  Lodgment 2 at 6.  Specifically, it was explained at the hearing that: "Offers have been extended to all defendants.  As to defendants Towers and Ford, however, they are not truly extended.  They are extended in the events that [co-defendants] 3, 4, 5, and 6 plead guilty."  The court explained: "There has been an offer extended to [Towers and Ford], but that offer they can only take if everybody accepts.  So as to Mr. Cruz, Mr. Thomas, Mr. Watkins, and Mr. Dodson, there have been prior other offers extended, and any one of you gentlemen can accept that offer by yourself and separate yourself out of this case.  Mr. Towers and Mr. Ford, however, can only accept the offer today if everybody accepts the offer."

accepting his guilty plea, the court explained that the discretion as to what the sentence would be remained entirely with the court"). Watkins received a 13-year sentence instead of a 34-year sentence.

There is also no evidence to indicate that the superior court judge should have doubted Watkins's ability to understand the consequences of the plea or to participate intelligently in the proceedings on November 29, 2011 or at the sentencing hearing on January 25, 2012. After an extensive explanation of the consequences of the plea deal, and in response to the court's questions as to whether he understood the terms of his plea and the constitutional rights he would be waiving, Watkins repeatedly answered that he understood. He did not tell the judge or his attorney that his history of depression or other illness was affecting his ability to participate in the proceedings. Thus, Watkins has not presented any evidence showing that, but for Mr. Berman's failure to procure a declaration from co-defendant Ford or other witnesses as to his innocence, there is a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial. This is especially true when there were four other co-defendants, apart from Mr. Ford, who were involved in the conspiracy and did not offer to provide a declaration as to Watkins's innocence.

**IT IS THEREFORE RECOMMENDED** that the Court find the state appellate court's' rejection of Watkins's ineffective assistance of trial counsel claim was neither an unreasonable application of clearly established federal law, nor an unreasonable determination of the facts of this case and **DENY** habeas relief on claim six.

## VI. CONCLUSION

Watkins has failed to show that the Court of Appeal's denial of his petition for writ of habeas corpus was objectively unreasonable application of law or facts. He has not established that the trial court violated his plea agreement by imposing a sentence enhancement, coerced him into pleading guilty, failed to elicit a factual basis for his plea, infringed upon his constitutional right to free speech and assembly or

mischaracterized his conspiracy charge. Watkins also did not establish that he was denied effective counsel. The Court submits this Report and Recommendation to United States District Judge Larry A. Burns under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.

For all the foregoing reasons, **IT IS RECOMMENDED** this habeas Petition be **DENIED** on the grounds that Petitioner is not in custody in violation of any federal right. **IT IS FURTHER RECOMMENDED** the Court issue an Order (1) approving and adopting this Report and Recommendation and (2) directing that judgment be entered denying the Petition.

**IT IS HEREBY ORDERED** no later than **January 20, 2015** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** any Reply to the Objections shall be filed with the Court and served on all parties no later than **February 3, 2015**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: December 29, 2014

Hon. Bernard G. Skomal
U.S. Magistrate Judge
United States District Court